FLUSHING FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff, v. HAROLD R. KAPNER et al., Defendants.

Supreme Court, Special Term, Queens County, May 19, 1954.

*Charles Snow* for William Gottfried, claimant.

*Leo Dikman,* as referee.

*Potter, Marcus & Montgomery* for Harold R. Kapner and another, defendants.

*Maurice A. Taub* for Thomas Semon and another, defendants.

*Nathaniel L. Goldstein, Attorney-General (Jack Garrell* of counsel), for Industrial Commissioner of the State of New York.

HALLINAN, J. This motion for an order directing the treasurer of the City of New York to pay surplus moneys deposited with him is, in effect, a motion to confirm the report of a referee in surplus moneys proceedings.

Two actions in foreclosure were heretofore consolidated by an order of this court, which directed that the surplus moneys proceedings be referred to a referee to hear and report the amount due to the claimants and their various priorities. There was a surplus of $1,825.50 in the Kapner action and a surplus of $3,516.27 in the Semon action. The total surplus of $5,341.77 is insufficient to pay all of the claims and there is a dispute among some of the claimants as to their priorities.

The principal contest is between the holder of the second mortgage and the two contract vendees, Kapner and Semon, who made down payments on their contracts to purchase the parcels of land involved in these foreclosure actions, but who never acquired title to the property. Both the Kapners and the Semons executed their contracts to purchase and made substantial payments between September 23, 1950, and November 15, 1950. The Kapners paid $2,550 on the purchase price; the Semons paid $2,875. The mortgage was not executed until December 14, 1951, and was recorded on January 10, 1952. The mortgage is nevertheless entitled to priority over the vendees' liens. The vendees never recorded their contracts, but even if they had, such recording would not have been constructive notice to subsequent purchasers. (*Schultz & Son* v. *Nelson,* 256 N. Y. 473, 476.) It would have protected the vendees only if it had been the means of acquainting the mortgagee with actual notice of their rights. (*Cassia Corp.* v. *North Hills Holding Corp.,* 278 App. Div. 960; *Pollack* v. *Viele,* 273 App. Div. 871, affd. 298 N. Y. 670.)

While the vendees sought to establish actual notice to the mortgagee, the evidence before the Referee failed to sustain that claim. The president of the corporation, which was constructing the houses, testified that he advised two of the officers of the corporate mortgagee and its attorney of the contracts of sale and that he had in his files copies of writings which would corroborate him. At the second hearing, he failed to produce any such writings, except a letter written to the attorney for the mortgagees ten months after the closing of the mortgage, wherein he supplied the names and addresses of Kapners and Semons in response to a request for such information. This would be consistent with the mortgagee's claim that the builder failed to advise it of outstanding contracts at the closing. It falls short of proving the builder's statement that he had advised the mortgagee at or before the closing of the mortgage.

All three of the persons whom the builder claims to have notified, deny that he ever told them of outstanding contracts. The officer, who inspected the property on November 12, 1951, said that it was practically a hole in the ground at that time from which he inferred that there were no contracts outstanding. This was the third mortgage transaction between this mortgagee and the builder. On the first such transaction, the buildings were practically completed and ready for painting and a list of outstanding contracts was furnished to the mortgagee.

The title closer testified that at the closing of the mortgage, no mention was made of outstanding contracts of sale, nor did his records made at the time of the closing show anything in connection with outstanding contracts of sale. From all of the evidence, it appears that the mortgagee had no knowledge or actual notice of the rights of the vendees and accordingly the mortgage is entitled to priority. The assignee of the mortgage is, of course, entitled to whatever priority the original mortgagee would have had. (*Wood* v. *Chapin,* 13 N. Y. 509, 518; *O'Neill* v. *Lola Realty Corp.,* 264 App. Div. 60.)

The Referee has found that there is due on the second mortgage the sum of $4,067 with interest at 6% from December 14, 1951. After deducting said amount and the expenses of this proceeding from the surplus fund, there will be but a little over $100 left. This remainder is claimed by the Industrial Commissioner of the State of New York for unpaid unemployment insurance taxes levied against the building corporation, which was the owner of the equity. The warrant for said taxes, issued pursuant to subdivision 2 of section 573 of the Labor

Law, was filed as a judgment on July 2, 1953, subsequent in time to the date when the vendees acquired their liens in 1950. The Industrial Commissioner, however, claims priority over all claimants, except the second mortgagee, by virtue of section 574 of the Labor Law.

Section 574 of the Labor Law provides, in part, as follows: " In the event of the *dissolution, insolvency, composition, or assignment for benefit of creditors* of any employer, contributions then and thereafter due from such employer under this article * * * shall (1) be on a parity with taxes * * * and (2) have priority over all other claims * * . *. In the event of an employer's *adjudication in bankruptcy, judicially confirmed extension proposal, composition, or reorganization under the federal bankruptcy act,* contributions then or thereafter due under this article * * * shall be entitled to such priority as is provided in such act." (Emphasis supplied.)

The second sentence of the quoted section is obviously inapposite here and it is on the first sentence alone that the Industrial Commissioner's claim must be based. But this surplus moneys proceeding does not come within the scope of any of the contingencies provided for in that sentence. It is not an action to dissolve a corporation, pursuant to section 71 of the General Corporation Law. It is not an insolvency proceeding, pursuant to article 3 of the Debtor and Creditor Law. It is not a composition, pursuant to subdivision 14 of section 15 of the Debtor and Creditor Law, nor is it an assignment for the benefit of creditors, pursuant to article 2 of the Debtor and Creditor Law. While it is true that insolvency broadly defined is a state in which a debtor's assets are insufficient to pay his liabilities, the term as used in section 574 of the Labor Law must be given a meaning consonant with the context of that section. It will be observed that all of the surrounding terms involve a surrender of all of the debtor's assets for the purpose of distributing them equitably among all of his creditors. They are analogous to bankruptcy which is the subject of the second sentence of section 574 of the Labor Law.

In surplus moneys proceedings, however, the debtor has not surrendered all of his assets and no attempt is made to distribute the surplus among all of his creditors, but only among those who had a lien on the land at the time of the sale. (*Nutt v. Cuming,* 155 N. Y. 309, 313.) It follows that the Industrial Commissioner is not entitled to a priority in this proceeding by virtue of section 574 of the Labor Law.

Apart from that statute, however, there remains the question of the State's common-law priority by virtue of its sovereignty. Certain it is that the State has priority over general unsecured creditors not only for taxes, but for any debt due it. (*Matter of Carnegie Trust Co.,* 206 N. Y. 390, 399.) But it is just as certain that in the absence of statute, there is no authority for preferring the State's claim over specific prior liens. (*Wise* v. *Wise Company,* 153 N. Y. 507, 511.) Indeed, the Industrial Commissioner himself admits that his lien is inferior to the second mortgage. But the mortgage would have been inferior to the vendees' liens, if the mortgagee had had notice of their existence. (*Cassia Corp.* v. *North Hills Holding Corp.,* 278 App. Div. 960, *supra; Pollack* v. *Viele,* 273 App. Div. 871, affd. 298 N. Y. 670, *supra.*)

In *Marshall* v. *New York* (254 U. S. 380), the United States Supreme Court, in holding that the State was entitled to priority over general creditors whose claims were not secured, said at page 382: "At common law the crown of Great Britain, by virtue of a prerogative right, had priority over all subjects for the payment out of a debtor's property of all debts due it. The priority was effective alike whether the property remained in the hands of the debtor, or had been placed in the possession of a third person, or was *in custodia legis.* The priority could be defeated or postponed only through the passing of title to the debtor's property, absolutely or by way of lien, before the sovereign sought to enforce his right." In that case, however, the single question presented was whether the State was entitled to priority over unsecured creditors. As the court pointed out at page 382: "No question of the relative priority of the State and the United States is involved. Nor does any question arise as to priority of the State over incumbrances."

In the instant case, the vendees acquired specific liens which were prior in time to the lien of the Industrial Commissioner and so are entitled to priority over his claim for taxes.

Since the expenses of administration and the second mortgage are a charge upon both parcels, they will be apportioned against the surplus in each action. (*Burchell* v. *Osborne,* 119 N. Y. 486.) The balance remaining in each surplus fund will then be paid to the respective vendee.

Settle order on notice to the referee and to the attorneys for the holder of the second mortgage, the Industrial Commissioner and the vendees.