OPINION OF THE COURT
Frank Composto, J.
Long Island Insurance Company has brought this inter-pleader action to determine which one or more of the inter-pleaded defendants is entitled to insurance proceeds of $9,268.15 due to defendant S & L Delicatessen (hereinafter referred to as defendant) as a result of a fire to its premises on February 8, 1977. Two of the interpleaded defendants — State of New York, Department of Taxation and Finance (hereinafter referred to as New York) and United States of America Department of Treasury-Internal Revenue Service (hereinafter referred to as United States) — have now respectively moved and cross-moved for summary judgment pursuant to CPLR 3212, the issue between them involving the priority of their respective tax liens. Although the other two interpleaded defendants — New York State Department of Labor and Sapperstein, Hochberg & Haberman, Inc. — have not submitted any papers on these cross motions, their claims must necessarily also be discussed and considered.
The relevant facts are not in dispute. Defendant S & L Delicatessen had been delinquent in the payment of its taxes. On June 4, 1974, New York, pursuant to subdivision (b) of section 1141 of the Tax Law, docketed a warrant in the office of the Clerk of Kings County for unpaid sales taxes against defendant in the amount of $7,746.92. This amount has not been paid and the present liability on that warrant, including interest and penalty is $10,268.32. This unpaid warrant, as well as subsequent additional warrants filed by New York *855 became liens against the real and personal property of the taxpayer when docketed (Tax Law, § 1141, subd [b]; Marine Midland Bank-Cent. v Gleason, 47 NY2d 758, 760).
The Department of Labor docketed four warrants for unpaid unemployment insurance taxes between September 4, 1975 and January 19, 1978, with a remaining balance of $178.
United States made four assessments for unpaid withholding and social security taxes against the defendant, with an unpaid balance of $572.10. The date of the first assessment and notice and demand by United States was April 19, 1976. Section 6322 of the Internal Revenue Code of 1954 (US Code, tit 26, § 6322) states that a Federal tax lien arises on the date the federal taxes are assessed against the taxpayer and section 6321 of the Internal Revenue Code (US Code, tit 26, § 6321) provides that the lien shall attach "upon all property and rights to property, whether real or personal, belonging to such person.”
Sapperstein, Hochberg & Haberman, Inc., licensed public adjustors, claim priority as to 10% of the insurance recovery pursuant to their retainer agreement with the defendant for representing it with the insurance company.
As between the respective claims of New York and United States, it is undisputed that had there been no fire New York’s lien would have priority since it had attached first (United States v New Britain, 347 US 81, 85-87). It is New York’s position that the priority continues into the insurance proceeds. United States argues, on the other hand, that their respective liens terminated as a result of the fire and reattached simultaneously to the insurance proceeds. Under the doctrine of simultaneous attachment, United States claims that its Federal tax lien would be given priority (United States v Graham, 96 F Supp 318, 321, affd sub nom. California v United States, 195 F2d 530, cert den 344 US 831; Matter of Rosenberg, 62 Misc 2d 12, 16).
Under New York law "a lien upon property attaches to whatever the property is converted into and is not destroyed by changing the nature of the subject” (Fisher-Hanson v Brooklyn Hgts. R. R. Co., 173 NY 492, 501). While Fisher-Hanson does not involve insurance proceeds, the court is persuaded by analogy elsewhere and under general equitable principles that this principle is applicable thereto.
The rule is supported by article 9 of the Uniform Commercial Code governing secured transactions. Subdivision (1) of *856 section 9-306 (as amd, eff July 2, 1978) of the Uniform Commerical Code states that: "Insurance payable by reason of loss or damage to the collateral is proceeds.” A security interest in the collateral continues into any identifiable proceeds of that collateral (Uniform Commerical Code, § 9-306, subd [2]). Even prior to the effective date of the amendment to subdivision (1) of section 9-306, it was held in PPG Inds. v Hartford Fire Ins. Co. (531 F2d 58, 61) that the intent of the section was the same. The court said in PPG Inds. (at p 62): "The original security interest was not in the after acquired proceeds but in the debtor’s inventory and equipment. When this was destroyed, PPG’s security interest continued under 9-306(1), first in the existing insurance policy and then in the funds which were paid out of that policy.”
Under article 9 of the Uniform Commerical Code, therefore, the lien in favor of the secured creditor would not terminate with the destruction of the secured property. Implicit in this rule is the rationale that the secured creditor (or lien holder) should not be prejudiced by the fortuitous destruction of the secured property, particularly when insurance coverage is so common and exists to replace destroyed property.
Finally, even United States concedes that pursuant to subdivision (b) of section 1141 of the Tax Law New York’s lien would reattach to the insurance proceeds once the obligation to pay them arises. The notion that there is an artificial moment when the New York lien terminates only to begin again an instant later against converted property is unconvincing. United States’ position goes against the universal principle that "the first in time is the first in right” in determining the priority of statutory liens (United States v New Britain, 347 US, at p 85).
The court finds, therefore, that New York’s lien on defendant’s real and personal property continued into the insurance proceeds payable as a result of the destruction of said property. As between the New York and the United States liens, it is clear that New York has priority in the disbursement of the interpleaded fund. In view of the fact that New York’s lien exceeds the amount of available insurance proceeds, United States would not be entitled to any of the proceeds.
As between the conflicting claims between New York, and the New York Department of Labor, the Department of Labor had docketed its warrants after New York’s initial *857 warrant and on that basis New York would have priority in the fund. The Department of Labor, however, cites section 574 of the Labor Law which entitles it to be on a parity with the taxes due to the State of New York, regardless of when its warrants were docketed. This special entitlement, though, is only valid in a proceeding involving dissolution, insolvency, composition, or assignment for the benefit of creditors (Labor Law, § 574, subd 1; Flushing Fed. Sav. & Loan Assn. v Kapner, 133 NYS2d 187, 191). The instant proceeding does not involve any of these claims and section 574 of the Labor Law is therefore inapplicable herein. Consequently, the court finds that the Department of Labor does not have parity with taxes due New York and New York’s first warrant has priority over those of the Department of Labor in the disbursement of the interpleaded fund.
As to Sapperstein, Hochberg & Haberman, Inc., any lien in their favor would have arisen after New York’s lien had attached to the defendant’s real and personal property and had continued unchanged into the insurance proceeds. Consequently, New York’s lien would have priority on the basis of the "first in time, first in right” rule.
Accordingly, the court holds that the New York lien has priority over each of the other competing liens herein and finds that it is entitled to all of the interpleaded insurance proceeds of $9,268.15 in satisfaction of its lien. New York’s motion for summary judgment is therefore granted and United States’ cross motion for summary judgment is denied.