In re John D. TERRITO, Debtor,

**FORD MOTOR CREDIT COMPANY and Robert Tauber, Trustee, Plaintiffs,**

v.

**John D. TERRITO, Defendant.**

**Bankruptcy No. 182–12033.**
**Adv. No. 182–0514.**

United States Bankruptcy Court,
E.D. New York.

Aug. 24, 1983.

**378**

Charles R. Tropp, Staten Island, N.Y., for debtor.

Raymond J. AAB, New York City, for Chelli & Bush.

Rood, Schwartz, Cohen & Ruderman, New York City, for Ford Motor Credit; David L. Tillem, New York City, of counsel.

Robert W. Tauber, Brooklyn, N.Y., Trustee.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Bankruptcy Judge.

This matter is before the court on a motion for summary judgment by the creditor-plaintiff, Ford Motor Credit Company (hereinafter Ford). In its moving papers Ford requests an order pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 756 of the Rules of Bankruptcy Procedure granting judgment in its favor on two of four causes of action found in a complaint duly served by it on the debtor-defendant, John D. Territo (hereinafter Territo), and filed with this Court. The first cause of action for which Ford seeks relief through this motion appears as the second cause of action in the complaint. In it Ford alleges that it is entitled to, as proceeds of its security interest in an automobile owned by Territo, a portion of the money received by Territo in settlement of a state court law suit for personal injury to himself and property damage to the automobile. The second cause of action for which Ford seeks relief appears as the third cause of action in the complaint. In it Ford alleges that the undisbursed money received from the aforementioned settlement is not exempt property pursuant to 11 U.S.C. Section 522(d)(11)(D) as Territo claims and is therefore property of the estate of the debtor.

### I

### FACTS

Sometime during 1978 Territo entered into a retail installment contract for the purchase of a new 1978 Mercury Monarch automobile from an automobile dealer. The debtor subsequently assigned the contract to Ford for value prior to maturity. The security interest of Ford in the automobile was duly noted on the certificate of title for the vehicle.

Immediately thereafter, Territo began making installment payments on the automobile. However, Ford has not received any payments since October 12, 1979. On October 6, 1981 Ford obtained an as yet unexecuted state court judgment against Territo in the sum of $6,120.95. Territo remains in possession of the vehicle.

In May of 1979 Territo was involved in an automobile accident resulting in personal injury to himself and property damage to the vehicle. Territo carried no collision or property damage insurance. He com-

menced an action for personal injury and property damages on December 17, 1979 in state court pursuant to the New York State Insurance Law, Section 670 *et seq.,* the "No Fault" statute. On July 18, 1982 the action was settled for $25,000. Nowhere in that settlement is there any indication as to what portion was allocated for personal injuries or property damages or pain and suffering. The entire amount of the settlement has been disbursed with the exception of $6,886.91. About one-third of the settlement, $8,475 went to Chelli & Bush, P.C., attorneys for Territo in the state court action; $7,038.09 went to Territo himself; and $2,600 went toward miscellaneous expenses. The remaining $6,886.91 is the subject of this proceeding.

On August 9, 1982 Territo filed a voluntary Chapter 7 petition in bankruptcy in which he claimed as exempt property under 11 U.S.C. 522(d)(11)(D),[1] proceeds of the settlement to the extent of the remaining $6,886.91. Ford filed an objection to the claimed exemption, and the Court ordered that Chelli & Bush hold the subject $6,886.91 until the present matter be resolved. *See, In re Territo,* 28 B.R. 315 (Bkrtcy.E.D.N.Y.1983).

Territo contends the money held by Chelli & Bush is exempt under 11 U.S.C. Section 522(d)(11)(D) because it was in settlement of an action for personal injury. He also contends that Ford has no security interest in any part of that money. Ford, on the other hand, contends that the personal injury exemption is not available to Territo and that it is entitled to the proceeds derived from the debtor's claim for property damage.

## II

## ISSUES

A. Does some portion of the $6,886.91 represent recovery for damages to the vehicle?

B. If so, does Ford have a valid security interest in those monies?

C. Did Territo suffer personal bodily injury as defined in 11 U.S.C. Section 522(d)(11)(D)?

D. If so, is any portion of the $6,886.91 exempt property pursuant to 11 U.S.C. Section 522(d)(11)(D)?

## III

## DISCUSSION

### A

■ Inasmuch as there was damage to the vehicle, some portion of the money Territo received in July of 1982 in settlement of the state court action constituted proceeds of the damaged vehicle as defined by the New York Uniform Commercial Code Section 9–306(1). In determining whether the money is proceeds, New York law requires an examination of the law at the time the car was destroyed. *First Nat. Bank of Highland v. Merchants Mutual Ins. Co.,* 49 N.Y.2d 725, 426 N.Y.S.2d 267, 402 N.E.2d 1168 (1980). The N.Y.U.C.C. Section 9–306(1) was amended on July 2, 1978 to read:

(1) "proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. *Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.* Money, checks, deposit accounts, and the like are "cash proceeds." All other proceeds are "non-cash proceeds." (amendment emphasized)

Territo was involved in the automobile accident in May of 1979, and entered into his settlement on July 28, 1982. The money he received can therefore clearly be classified as proceeds, under authority of the

---

1. (d) the following property may be exempted under subsection (b)(1) of this section;

(11) The debtor's right to receive, or property that is traceable to—

(D) a payment, not to exceed $7,500 on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent.

above amended statute since the amendment predated the damage to the vehicle by nearly one year.

The above amendment to section 9–306(1) was originally proposed in 1972 by the Commissioners on Uniform State law who felt such an amendment was necessary "to overrule various cases which had held that the proceeds of insurance on collateral are not proceeds of the collateral." *PPG Industries, Inc. v. Hartford Fire Insurance,* 531 F.2d 58, 61 (2d Cir.1976). As other states besides New York began to adopt this amendment, the decisions of New York courts were influenced. Although the amendment was not adopted in New York until July of 1978, *PPG Industries,* decided in 1976, stressed the importance of the Commissioner's motivations and in fact treated insurance as proceeds.

The defendant argues that the reference to insurance found in section 9–306(1) clearly establishes that only proceeds from a contract for insurance for that vehicle are intended to be deemed "proceeds" under the statute. However, neither the words nor the intent of the Commissioners seems to suggest this narrow interpretation. As stated above, the amendment's intent was to broaden the definition of proceeds and to clarify misinterpretation of the section. The proceeds of the subject vehicle fit within this amended definition. In addition, section 9–306 specifically mentions proceeds from damage to the collateral, and not total destruction. Therefore, the fact that Territo's automobile was damaged and not totally destroyed is of no special consequence with respect to this issue. Some portions of the money received by Territo from the settlement of the state court action obviously constitutes proceeds of property damage claims.

## B

█ Ford has a perfected interest in Territo's automobile. The installment contract which governs the transaction provides that Ford shall have a "security interest in the vehicle and any money or goods received for that vehicle."[2] Ford's claim is further strengthened by N.Y.U.C.C. section 9–203(3) which gives the secured party the right to proceeds provided in section 9–306. Ford followed all procedures for perfecting its interest in the vehicle by correctly filing and complying with local and multistate geographical requirements. Both parties agree that the security interest is therefore perfected.

A security interest continues in identifiable proceeds from collateral. Section 9–306(2). The proceeds from the settlement are an identifiable sum representing injury to Territo and damage to the automobile and therefore Ford's security interest continues in them to the extent they represent damage to the automobile. Section 9–306(2) also states that a security interest continues as long as disposition of the collateral was not authorized by the secured party. Quite obviously, the automobile accident was not authorized by Ford.

In addition, under section 9–306(2) a lien in favor of a secured creditor does not terminate with the destruction of the secured property. *Long Island Ins. C. v. S & L Delicatessen,* 102 Misc.2d 853, 424 N.Y.S.2d 849 (1980). "Implicit in this rule is the rationale that the secured creditor (or lien holder) should not be prejudiced by the fortuitous destruction of the secured property, particularly when insurance coverage is so common and exists to replace destroyed property." *Long Island Ins. Co.* at 856, 424 N.Y.S.2d 849. This same reasoning logically applies to collateral that has been partially destroyed.

Thus, if Ford as a secured creditor is to be protected by the U.C.C. and the Bankruptcy Code, it is entitled to a security interest in that portion of the proceeds that represents damage to the automobile. Territo's original negligence action asked for $800,000 in personal damages and $52,000 in property damages. The eventual settle-

---

**2.** Neither Ford nor Territo has been able to locate the original contract. Instead, a blank contract was entered as evidence by Ford and neither party disputes that it is similar to the one signed.

ment was in a lump sum of $25,000 without any mention of any intended apportionment of that amount between personal injury and property damage. Therefore, it must be assumed, in the absence of evidence to the contrary, that some portion of the recovery was for damage to the collateral. Defendant's brief states that the damage to the automobile was approximately $1,500. Further fact finding must be conducted to determine the precise extent of Ford's interest.

### C

█ The Bankruptcy Code provision regarding exemptions is clear in its intent. In the legislative history, H.R.Rep. No. 595, 95th Cong., 1st Sess., 362 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787 it is stated that since the personal injury exemption mentioned in section 522(d)(11)(D)[3] does not cover pain and suffering or compensation for actual pecuniary loss, the exemption is designed to cover only payments covering actual bodily injury, e.g., the loss of a limb. In other words, the only exemption available for a debtor in a bankruptcy proceeding is for the payment covering actual bodily injury.

Actual bodily injury or personal injury is not defined by the Bankruptcy Code. In one case, *In re Lynn,* 13 B.R. 361, 7 B.C.D. 1379 (W.D.Wisc.1981) it was stated that injuries to a plaintiff's back, spine, neck, hips, pelvis, left leg and foot constituted personal injury. Territo's injury appears to be substantial enough to qualify as a personal injury under this limited definition. The transcript of the adversary proceeding of November 16, 1982 indicates that Territo "suffered a herniated disc or something of that sort." (p. 36). Territo's attorney claims that as a result of the accident, the debtor was disabled and had to return to school to learn a new profession because "he could not continue what he had done before." (p. 5). The parties have agreed that Territo suffered a bodily injury which was serious and in the absence of a clear definition under the Bankruptcy Code this court will accept that the injury was both personal and serious.

### D

Territo alleges that the $6,886.91 held by Chelli & Bush is entirely exempt because it is attributable solely to personal bodily injury. He believes he can exempt that entire sum as compensation for the personal injury he received as a result of the aforementioned accident because it is less than the $7,500 exemption allowable under the Bankruptcy Code for such injuries.

Ford, on the other hand, claims that not only is the $6,886.91 at least partially subject to its security interest, but it is also non-exempt because Territo's recovery by New York law was limited to pain and suffering and other forms of non-economic loss for which the Bankruptcy Code does not permit exemptions. I disagree.

Under New York's "No Fault" Insurance Law, section 670 *et seq.* (Insurance Law, Article XVII—Comprehensive Automobile Insurance Reparations Act) a person involved in an automobile accident is covered by his own insurance carrier on a no fault or first party basis for basic economic loss. Basic economic loss is defined for the purposes of the "No Fault" law as all necessary medical expenses, loss of earnings, and other reasonable and necessary expenses incurred as a result of an automobile accident up to $50,000. Section 671(1).

█ To recover for economic losses in excess of $50,000 and for non-economic loss, such as pain and suffering, a person must allege that he suffered a serious bodily injury. Section 673(1). *Taber v. Niagra Frontier Transit Authority,* 101 Misc.2d 92, 420 N.Y.S.2d 692 (1979). Both parties agree that John Territo suffered a serious bodily injury as defined by section 671(4). Territo was therefore able to sue in tort for his non-economic loss.

**3.** *See,* Note 1.

Non-economic loss is defined in Section 671(3) as "pain and suffering and similar non-monetary detriment." Ford asks this Court to accept its argument that a plaintiff who alleges that he suffered a serious bodily injury may only recover for non-economic loss which, as earlier stated, is not exemptable under the Bankruptcy Code. This interpretation of the law is incorrect. The fact that "No Fault" covers basic economic loss up to $50,000, does not preclude an additional recovery under tort law. 1 *Benders' Personal Injury*, Trial of Accident Cases—Automobiles, Section 101:1–3 (3d ed. 1981); *See, Adams v. Government Emp. Ins. Co.*, 383 N.Y.S.2d 319, 52 A.D.2d 118 (1976). Where not prohibited tort actions for unpaid economic losses for personal bodily injury in excess of the basic benefits provided by law may presumably be brought.

In *Adams,* a "hit and run" accident victim who suffered a serious injury accepted first party benefits under "No Fault" and was not precluded from bringing an action for recovery of damages to compensate her for personal injuries, which included, but was not necessarily limited to, pain and suffering. The opinion restated Insurance Law section 671(1) by saying that the only restriction on the victim was that she could not sue for her "basic economic loss."

It has been established that Territo suffered a personal bodily injury. It has also been established that the monies held by Chelli & Bush, which are the subject of this proceeding, may represent a recovery for those injuries. Therefore, it cannot be said as a matter of fact or law that those monies only represent a recovery for pain and suffering. Evidence sufficient to establish the precise nature of the recovery has not been presented. Accordingly, the plaintiffs have not met the burden required for a grant of summary judgment on this cause of action; they have not proven the absence of any triable issues of fact.

## IV

## CONCLUSIONS

Based on the foregoing this Court finds that the plaintiff, Ford Motor Credit Company, has a secured interest in that portion of the money held by Chelli & Bush which represents a settlement for damages suffered by the subject vehicle. Accordingly, summary judgment is granted the plaintiff on this, the second cause of action in its complaint against the debtor, Territo. Further fact finding should be conducted in order to establish the precise extent of Ford's security interest.

With regard to the third cause of action in the plaintiff's complaint, this Court finds that the balance of the money held by Chelli & Bush is not as a matter of law or fact entirely attributable to either actual personal injury or pain and suffering. Further fact finding must be conducted in order to establish how that money should be apportioned. Thus, the plaintiff's motion for summary judgment on this third cause of action, which asks that the money be deemed entirely nonexempt, is denied. The parties are directed to proceed with an evidentiary hearing to determine the amount in question.

IT IS SO ORDERED.