In re Dwight RING, a/k/a Harvey Dwight Ring, SSN: 252–94–9493, Debtor.

Walter W. KELLEY, Trustee, Plaintiff,

v.

Dwight RING, a/k/a Harvey Dwight Ring, Morris Sumner, and Betty Ring, Defendants.

Bankruptcy No. 92–70025–VAL.
Adv. No. 92–7038–VAL.

United States Bankruptcy Court, M.D. Georgia, Valdosta Division.

June 23, 1993.

Thomas D. Lovett, Albany, GA, for plaintiff.

David Roy Hege, Tifton, GA, for defendants.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On May 13, 1993, the court held a hearing on the Chapter 7 Trustee's Motion for Partial Summary Judgment. The counsel for the parties stipulated that the only issue before the court was whether the disaster payments were property of the estate. At the conclusion of the hearing, the court took the matter under advisement to allow the Defendants the opportunity to submit briefs on the issue of whether the crop disaster payments from the Agriculture Stabilization and Conservation Service were property of the estate pursuant to § 541 of the Bankruptcy Code and thus subject to the turnover provisions of § 542. After considering the briefs of both parties, the court finds that the disaster payments are property of the bankruptcy estate and should be turned over to the Chapter 7 Trustee pursuant to Bankruptcy Code § 542.

On January 10, 1992, the Debtor filed his Chapter 7 petition. The Debtor failed to list in his schedules of assets his claim for crop disaster payments. The Debtor's right to disaster payments stems from a bill that was signed into law on December 12, 1991, by then President Bush authorizing payments to farmers for losses on 1990 and 1991 crops. The purpose of the Disaster Payment Program for the 1990, 1991, and 1992 crop years was to make benefits available to eligible farmers who had suffered a crop loss due to weather damage or related conditions. Disaster Payment Program for 1990 and Subsequent Crops, 7 C.F.R. § 1477.1 (1992). Applications for disaster payments for the 1990 and 1991 crop losses were required to be filed from February 3 through March 13, 1992. Disaster Payment Program for 1990 and Subsequent Crops, 7 C.F.R. § 1477.7 (1992). The Debtor filed the applications during the specified time period. On April 15, 1992, the Agriculture Stabilization & Conservation Service paid the Debtor $58,987.00 in the form of seven checks as benefits for the crop disaster years 1990 and 1991. The Debtor transferred disaster payments of $30,000.00 to his father-in-law, Morris Sumner and $3,000.00 to his mother, Betty Ring.

The Chapter 7 Trustee filed a no asset report with the court on February 19, 1992. On May 8, 1992, the court granted the Debtor a discharge, and the Final Decree also was entered. However, the Chapter 7 Trustee attempted to withdraw his report of no distribution on July 24, 1992. Subsequently, on September 10, 1992, the Trustee filed a motion to re-open the case. On September 30, 1992, the court held a hearing and granted the Trustee's motion to the re-open case.

On October 13, 1992, the Trustee filed a complaint against the Debtor seeking the revocation of the Debtor's discharge and the turnover of the disaster payments. The Trustee alleged that the Debtor had received disaster payments in the amount of $58,-987.00. The summons was issued on October 21, 1992, and the attorney for the Trustee served the summons and complaint on October 22, 1992. On November 9, 1992, the Debtor filed his answer.

The court granted the Trustee leave to amend his complaint on December 3, 1992. On December 8, 1992, the Trustee amended the complaint by adding Betty Ring and Morris Sumner as Defendants in the turnover portion of the case. The Trustee alleges that the Debtor transferred disaster payments of $30,000.00 to Morris Sumner and $3,000.00 to Betty Ring. The summons was issued on December 18, 1992. The Trustee served the summons and complaint on December 23, 1992. The Defendants served their answers on January 18, 1993. On April 5, 1993, the Trustee filed a report of possible assets. The Trustee filed a motion for partial summary judgment on April 5, 1993.

After the hearing, one of the defendants, Morris Sumner, hired new counsel. The new counsel submitted a letter brief that disputed the facts. However, at the conclusion of the hearing the record was closed except to allow the court to consider and review 7 C.F.R. 1477, and no allegations in a brief unsupported by evidence of record can be considered.

The Trustee argues that the disaster payments are property of the estate pursuant to § 541. Although the Debtor could not apply

for and receive the benefits until after the filing of his petition, the right to such payments is derived from the pre-petition enactment of a Federal law providing for the future payments to farmers suffering crop losses in 1990 and 1991. The Debtor's disaster benefits for the 1990 and 1991 crop years are a substitute crops lost in 1990 and 1991. The Trustee contends that the Debtor's right for disaster benefits was therefore property of the estate as of the January 10, 1992, the filing date. Pursuant to § 542 of the Bankruptcy Code, the Trustee asks that the Debtor and Morris Sumner turn over all A.S.C.S. disaster payments received by them, along with all equipment, tools, supplies, materials, and items manufactured from materials purchased with the A.S.C.S. funds.

The Debtor and Sumner contend that since he could not submit an application until after the Chapter 7 petition had been filed, the disaster proceeds are not property of the estate. The Defendants argue that any benefits received by him and the other Defendants constitute after-acquired property and therefore are not property of the estate.

The Seventh Circuit[1] found that benefits from the payment-in-kind program, where farmers are paid for agreeing to forego planting any crops, are not crop "proceeds." However, the court distinguished its situation from the circumstances of disaster relief payments for crop losses. The disaster relief payments are paid in compensation for already existing plants that had been cultivated through the recipient's effort. *Matter of Schmaling*, 783 F.2d at 683; *See In re Kingsley*, 865 F.2d 975, 979 (8th Cir.1989) (holding that government payments for diversion of cropland to conservation uses were not "proceeds" of crops).

The Tenth Circuit[2] held, as did the *Schmaling* court, that proceeds from the payment-in-kind program are not property of the estate. The *Schneider* court stated that "[a]gricultural entitlement payments which

result from the actual disposition of a planted crop are proceeds of that crop. *In re Schmaling*, 783 F.2d 680, 682–83 (7th Cir. 1986); *Pombo v. Ulrich (In re Munger)*, 495 F.2d 511, 512 (9th Cir.1974); *Barash v. Peoples Nat'l Bank of Kewanee (In re Kruger)*, 78 B.R. 538, 541 (Bkrtcy.C.D.Ill.1987); *In re Kruse*, 35 B.R. 958, 965–66 (Bkrtcy.D.Kan. 1983); *First State Bank of Abernathy v. Holder (In re Nivens)*, 22 B.R. 287, 292 (Bkrtcy.N.D.Tex.1982)." *Schneider*, 864 F.2d at 685.

The United States Bankruptcy Court for the Northern District of Iowa held that post-petition entitlements for crops under the Disaster Assistance Act of 1988 were property of the estate under § 541. *In re White*, No. BRL88–00971C, 1989 WL 146417 (Bankr. N.D.Iowa Oct. 27, 1989). The debtor filed a Chapter 12 petition on June 21, 1988. The effective date of the emergency crop loss program was August 11, 1988. This program was designed to compensate qualified producers for crop loss caused by hail, excessive moisture, drought, or related conditions in 1988. On March 17, 1989, the Debtor filed an application for disaster benefits for the 1988 crop year. On June 9, 1989, the Debtor received the disaster assistance payments. The Debtor filed a complaint to determine whether the tax liens held by the I.R.S. and the Iowa Department of Revenue and Finance ("Department") extend to his entitlements under the disaster assistance program. The Debtor filed a motion for summary judgment, and the I.R.S. filed a cross-motion for summary judgment. The Department did not resist the motions. The Department conceded that the I.R.S. held superior tax liens against the property involved in the case.

The court framed the issue as whether the Debtor's post-petition entitlements under the disaster assistance program qualify as crop "proceeds" under § 541(a)(6)[3]. The Debtor contended that the estate had no interest in the entitlements at the time of filing and that

---

1. *Matter of Schmaling*, 783 F.2d 680 (7th Cir. 1986).

2. *In re Schneider*, 864 F.2d 683 (10th Cir.1988).

3. 11 U.S.C.A. § 541(a)(6) states that

"Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C.A. § 541(a)(6) (West 1993).

assets acquired post-petition are not subject to the claims of pre-petition creditors. The I.R.S. argued that post-petition entitlements qualify as crop "proceeds" under § 541(a)(6) of the Bankruptcy Code. The court discussed the relevance of the Uniform Commercial Code's definition of proceeds[4] and noted that the Bankruptcy Code's definition is broader.

> The Debtor's entitlements under the Act provide compensation for crop losses caused by the 1988 drought. Those entitlements are analogous to insurance payments for crop loss or damage. The definition of proceeds under section 9–306 expressly refers to insurance payable for loss or damage to the collateral. *See In re Territo,* 32 B.R. 377, 379–80 (Bankr. E.D.N.Y.1983); *In re Hanson Dredging, Inc.,* 15 B.R. 79, 82 (S.D.Fla.1981). The definition of proceeds under 11 U.S.C. section 541(A)(6) also extends to postpetition insurance payments.

*In re White,* at 4.

The *White* court, quoting a Eastern District of Pennsylvania case, stated:

> 'Although 11 U.S.C. section 541(a)(1) refers to property interests "as of the commencement of the case," the debtor is correct that under 11 U.S.C. section 541(a)(6) the estate includes the postpetition proceeds from such property interests. Those "proceeds" may include insurance payments or damage claims; the critical factor is that, although the right to payment arose post-petition, the property at issue was prepetition property which became part of the estate.'

*In re White,* at 4 (quoting *In re Reed,* 94 B.R. 48, 52–53 (E.D.Pa.1988)).

The court held that the entitlements under the disaster assistance program qualify as crop "proceeds" under § 541(a)(6) of the Bankruptcy Code and granted the I.R.S.'s motion for summary judgment.

In 1982, a bankruptcy court addressed the competing claims of the Chapter 7 Trustee and secured creditors to crop disaster and deficiency payments. *In re Nivens,* 22 B.R. 287 (Bankr.N.D.Tex.1982). On March 18, 1982, the debtor, a farming partnership, filed its petition. 1981 was the last crop year the debtor had farmed. As a result of a poor farming year, the debtor became entitled to deficiency and disaster payments. The S.B.A. and a bank were two secured creditors claiming an interest in the payments. Although the S.B.A.'s security interest was subordinated to that of the bank, it still contended that it had a right to setoff pursuant to § 553 as to the government support payments. The trustee contended that neither of the creditors had a properly perfected security interest in the crop disaster payments.

The court held that the secured creditors' liens in the crops continued in the disaster and deficiency payments. The payments were found to be proceeds of the crops. The *Nivens* court stated:

> It is apparent that checks are not "crops." However, the subsidy payments in these proceedings are at least substitute for crops or proceeds of crops. The bank and SBA, by their respective liens against crops, covered not only the crop but also the proceeds of those crops. A disaster occurred during the crop year which prevented the yield from being as great as it would have been had the disaster not occurred. The disaster payments are merely the substitute for proceeds of the crop which logically would have been received had the disaster or low yields not occurred. In the same manner the ASCS deficiency payments are made, because it is determined that farmers should receive a target price for the crop. The crop lien includes lien on proceeds and the deficiency payments are monies from the government which make up the difference between the amount of money actually received for the

---

**4.** U.C.C. § 9–306(1) states:

(1) "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit, accounts, and the like are "cash proceeds". All other proceeds are "non-cash proceeds".

crop and that amount which the Department of Agriculture has determined, on a nation-wide basis, that a producer should receive for a particular crop. It is logical to conclude that the deficiency payments are substitute for proceeds of crops.

*Nivens,* 22 B.R. at 291–92.

Under the analysis of the cases discussed above, the A.S.C.S. disaster payments to the Debtor qualify as crop "proceeds" under Bankruptcy Code § 541(a)(6). As explained by the *White* court, crop disaster payments are analogous to insurance payments for crop loss or damage. Post-petition insurance payment are within the definition of proceeds under 11 U.S.C.A. § 541(a)(6). Even though the Debtor could not apply for the benefits until after he had filed his petition, the disaster payments were prepetition property which became part of the estate since they were proceeds of the 1990 and 1991 crop years. The purpose of the disaster payments is to compensate the Debtor for crop losses. Since the crops and their proceeds are property of the estate and the disaster payments are merely the substitute for the proceeds of the crops, then it logically follows that the disaster payments are also property of the estate. The court finds that the disaster payments are "proceeds" as defined by § 541(a)(6).

A separate order will be entered in accordance with this memorandum opinion.

### ORDER

Based upon the Findings of Fact and Conclusions of Laws in accordance with the Memorandum Opinion, the court grants the Chapter 7 Trustee's Motion for Partial Summary Judgment and finds that the disaster payments are property of the estate under Bankruptcy Code § 541. Pursuant to 11 U.S.C.A. § 542, judgment is rendered against the Debtor and Morris Sumner, jointly and severally, in the amount of $30,-000.00. Judgment is also rendered against the Debtor and Betty Ring, jointly and severally, in the amount of $3,000.00. The court renders a judgment against the Debtor in the amount of $25,987.00. All equipment, tools, supplies, materials, and items manufactured from materials purchased by the Debtor with

the ASCS Disaster Fund shall be turned over to the Chapter 7 Trustee. The net value of these assets after liquidation shall be credited against the $25,987.00. Each judgment shall include pre-judgment interest at the rate of 3.51 percent from and after July 23, 1992. The post-judgment interest rate is 3.54 percent. The Trustee is also awarded costs of this action.

SO ORDERED.