**In re John Wayne BOYETT, Debtor.**

**John Wayne Boyett, Debtor/Plaintiff,**

**v.**

**Anne R. Moore, Trustee/Defendant.**

Bankruptcy No. 99–10420.
Adversary No. 99–06022A.

United States Bankruptcy Court,
S.D. Georgia,
Statesboro Division.

May 31, 2000.

See also 250 B.R. 822.

J. Michael Hall, Attorney at Law, Statesboro, GA, for Debtor/Plaintiff.

Anne R. Moore, Attorney at Law, Statesboro, GA, for Trustee/Defendant.

### ORDER

JOHN S. DALIS, Chief Judge.

John Wayne Boyett ("Debtor"), a chapter 7 debtor in the underlying bankruptcy case no. 99–10420, brought a Complaint to Recover Property against Anne R. Moore, the chapter 7 case trustee ("Trustee"). The property in question is a crop loss disaster relief payment of $9,012.00 made by the Farm Service Agency of the United States Department of Agriculture. Debtor claims that the monies are not property of the estate. Trustee maintains that they are. At the scheduling conference the parties agreed that whether the disaster relief payment was property of the estate was purely a question of law and not of fact, and that the matter would be submitted on briefs. The crop loss disaster relief payment is property of the estate.

The facts of this case are as follows. Like many other farmers, Debtor suffered crop losses in 1998. In response to such losses, Congress established the Crop Loss Disaster Assistance Program ("CLDAP"),[1] which appropriated funds for disaster relief payments to farmers who suffered crop losses in 1998. The Department of Agriculture was charged with developing regulations to implement the CLDAP, and with administering the program through its Farm Service Agency. The law that included the CLDAP was enacted on October 21, 1998. Applications for benefits had to be submitted between February 1, 1999, and April 9, 1999. CLDAP regulations became effective on April 15, 1999.

On February 16, 1999, Debtor petitioned for bankruptcy relief under chapter 7.

On April 6, 1999, Debtor applied for CLDAP benefits. Trustee notified the Farm Service Agency of Debtor's bankruptcy case.

On June 11, 1999, the Farm Service Agency issued a check in the amount of $9,012.00 for Debtor's 1998 crop losses in

---

1. The Agricultural, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999 (Pub.L. 105– 277, 112 stat. 2681, Oct. 21, 1998) includes the CLDAP. Regulations for the CLDAP are set forth in 7 C.F.R. 1477.

watermelons and squash, payable to Trustee. Debtor filed this adversary proceeding to recover those monies on the grounds that they are not property of the estate. Although the parties' statements of fact vary slightly as to names of federal agencies and acts, they do not contest the material facts: pre-petition, Debtor suffered crop loss and Congress enacted the CLDAP; and post-petition, regulations were issued and Debtor applied for federal monies. The issue is purely legal: whether the federal disaster relief payment is property of the estate. The Court has jurisdiction to hear this matter as a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(A) and 28 U.S.C. § 1334 (1994).

Property of the estate is defined in § 541 of the Bankruptcy Code.

Property of the estate

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. . . .

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

Debtor claims that the disaster relief payment is not property of the estate because Debtor's right to payment was not in existence at the time he filed for bankruptcy. Although the CLDAP was enacted prior to the bankruptcy filing, Debtor relies on the fact that regulations and sign-up period were not established until post-petition. However, Debtor's brief establishes that the application period was February 1 to April 9, which spans both the pre- and post-petition period. Debtor argues that the right to payment did not exist until the regulations became effective on April 15, 1999, post-petition.

This argument has already been considered and denied by other bankruptcy courts. *Lemos v. Rakozy (In re Lemos),* 243 B.R. 96 (Bankr.D.Idaho 1999); *Drewes v. Lesmeister (In re Lesmeister),* 242 B.R. 920 (Bankr.D.N.D.1999); *Kelley v. Ring (In re Ring),* 169 B.R. 73 (Bankr.M.D.Ga. 1993), *aff'd* 160 B.R. 692 (M.D.Ga.1993); *see also Conagra, Inc. v. Farmers State Bank,* 237 Mich.App. 109, 602 N.W.2d 390, 396 (1999) (in non-bankruptcy case, government disaster payments were held to be proceeds of crop within meaning of Uniform Commercial Code); *White v. United States, Internal Revenue Service (In re White),* 1989 WL 146417 (Bankr. N.D.Iowa); *First State Bank of Abernathy v. Holder v. United States Small Business Administration (In re Nivens),* 22 B.R. 287 (Bankr.N.D.Tex.1982).

On facts nearly identical to this case, three bankruptcy courts have held that crop loss disaster relief payments are property of the estate under § 541(a). *Lemos,* 243 B.R. 96; *Lesmeister,* 242 B.R. 920; *Ring,* 169 B.R. 73. Each case concerned a farmer who suffered crop loss; petitioned for bankruptcy relief under chapter 7; and post-petition applied for federal disaster relief payments on the pre-petition crop (one debtor, Lemos, filed under chapter 12 and converted to chapter 7).

In the first of these cases, *Ring,* the farmer/debtor filed chapter 7 bankruptcy after enactment of federal relief legislation and before regulations allowed application for payment. 169 B.R. 73. Exactly as here, the debtor argued that the relief payment was not property of the estate because he could not apply for it until after his bankruptcy petition had been filed. The court held that the disaster relief payments were proceeds of the pre-petition crops, and therefore property of the estate under § 541(a)(6). 169 B.R. 73, *citing White,* 1989 WL 146417, and *Nivens,* 22

B.R. 287. In *White,* a chapter 12 debtor applied, post-petition, for crop loss disaster benefits for pre-petition crops. 1989 WL 146417. The court reasoned that compensation for crop loss caused by drought was analogous to insurance payments for crop loss or damage, and held that the disaster benefits qualified as crop proceeds under § 541(a)(6) and were subject to lien by the I.R.S. *Nivens* held that where liens covered crops and crop proceeds, those liens were properly perfected in crop loss disaster payments, because the payments were "at least substitute for crops or proceeds of crops.... The disaster payments are merely the substitute for proceeds of the crop which logically would have been received had the disaster or low yields not occurred." 22 B.R. at 291–92.

> Under the analysis of the cases discussed above, the A.S.C.S. disaster payments to the Debtor qualify as crop "proceeds" under Bankruptcy Code § 541(a)(6). As explained by the White court, crop disaster payments are analogous to insurance payments for crop loss or damage. Post-petition insurance payment are within the definition of proceeds under 11 U.S.C.A. § 541(a)(6). Even though the Debtor could not apply for the benefits until after he had filed his petition, the disaster payments were prepetition property which became part of the estate since they were proceeds of the 1990 and 1991 crop years. The purpose of the disaster payments is to compensate the Debtor for crop losses. Since the crops and their proceeds are property of the estate and the disaster payments are merely the substitute for the proceeds of the crops, then it logically follows that the disaster payments are also property of the estate. The court finds that the disaster payments are "proceeds" as defined by § 541(a)(6).

*Ring,* 169 B.R. at 77; *aff'd,* 160 B.R. 692 (M.D.Ga.1993).

The facts of *Lesmeister* mirror the facts of this case: the Lesmeisters suffered loss of their 1998 crops; they filed for chapter 7 relief in February, 1999; and in April, 1999, they applied for federal crop loss benefits through the CLDAP enacted by Congress on October 21, 1998. 242 B.R. at 922–23. The court did not determine disaster payments as proceeds but as "closely analogous to a right of action for damages not yet put into suit." *Id.* at 924. *Lesmeister* held that the disaster payments were property of the estate under § 541(a)(1), which reserves to the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); 242 B.R. at 923–25.

> For purposes of section 541 it is not necessary to resolve the issue in the context of crop proceeds ... Lesmeisters right to 1998 CLDAP payments is for purposes of section 541, best characterized as a pre-petition right of action—an unliquidated chose in action....
>
> The effective date of the legislation creating a right to payments was October 21, 1998, and by that time all events (that is, crop losses) giving Lesmeisters a right to benefits, had occurred. All that remained was for Lesmeisters to complete the application for assistance which was a ministerial act in this Court's view. The Court believes that on October 21, 1998, Lesmeisters acquired a right to CLDAP proceeds and hence said proceeds must be regarded as property of the estate.

*Lesmeister,* 242 B.R. at 924–25.

Shortly after *Lesmeister* was decided, the *Lemos* court analyzed CLDAP payments both as a contingent interest under § 541(a)(1) and as proceeds under § 541(a)(6). *Lemos,* 243 B.R. 96. *Lemos* also noted that equity called for the CLDAP payment to be property of the estate.[2] 243 B.R. at 100. Otherwise, the

**2.** "Additionally, it would be inequitable in these circumstances to allow Plaintiff to reclaim the funds. Plaintiff received a dis-

charge in his bankruptcy case. Plaintiff admitted at trial that some discharged debts were prebankruptcy farm expenses. Allowing

debtor would retain the disaster payment at the same time that he discharged the debts incurred in qualifying for that payment. Lemos applied for funds through the CLDAP established on October 21, 1998, just as both Lesmeister and Debtor here did. However, Lemos had petitioned for bankruptcy in February, 1998, before the CLDAP was enacted. Nonetheless, the court held that the disaster relief payments for pre-petition crop loss were property of the estate under either § 541(a)(1) or § 541(a)(6). *Id.* at 101.

The *Lemos* court first determined that the crop disaster benefits were property of the estate under § 541(a)(1), as a legal or equitable interest existing at the commencement of the case. 11 U.S.C. § 541(a)(1); 243 B.R. at 98–100. Entitlement to the CLDAP payment resulted from qualifying events (growing crops and suffering losses) occurring before bankruptcy. No significant events took place afterwards. Even though the CLDAP was enacted and implemented post-petition, the payments resulted from events "so rooted in the debtor's prebankruptcy past that they should be included as property of the estate." *Lemos,* 243 B.R. at 99, *citing Battley v. Schmitz (In re Schmitz),* 224 B.R. 117 (Bankr.D.Alaska 1998) *(supplemented by* 232 B.R. 173 (Bankr.D.Alaska 1999)),[3] *citing Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

Because Congress frequently and regularly enacts disaster relief programs for farm losses, the court characterized the prospect of such a program for any given year as a contingent interest. The contingent interest may never vest if no program encompasses a particular crop or a particular year. Yet, when it relates to pre-petition crops, the contingent interest becomes property of the bankruptcy estate under § 541(a)(1). *Lemos,* 243 B.R. at 99.

*Lemos* held in the alternative that the payments were property of the estate as proceeds under § 541(a)(6). 243 B.R. at 100–01. The court adopted the reasoning of *Ring.* 169 B.R. 73. Despite post-petition enactment of the CLDAP, the CLDAP payments derived from the loss of pre-petition crops. "It is indisputable that Congress intended the payments ... as additional compensation for the crops grown before bankruptcy." 243 B.R. at 100. As compensation, i.e. proceeds, for pre-petition crops, the payments were property of the estate pursuant to § 541(a)(6).

Debtor argues that other bankruptcy cases call for a ruling that the disaster payment is not property of the estate. *United States, Small Bus. Admin. v. Gore (In re Gore),* 124 B.R. 75 (Bankr.E.D.Ark. 1990); *In re Fryar,* 99 B.R. 747 (Bankr. W.D.Tex.1989); *Walat Farms, Inc. v. United States, Dept. of Agriculture (In re Walat Farms, Inc.),* 69 B.R. 529 (Bankr. E.D.Mich.1987). However, the cases Debtor cites are not on point. They concern contracts, signed by farmers and government agencies, in which the farmers agreed not to plant crops on certain acreage in exchange for payment. When the farmers filed for bankruptcy, the govern-

the Plaintiff to recover the CLDAP payments designed to compensate Plaintiff for his losses, while discharging debts he incurred while growing the qualifying crops, would give Plaintiff an unjustified windfall to the detriment of the same creditors who helped Plaintiff qualify for the benefits." *Lemos,* 243 B.R. at 100.

**3.** In *Schmitz,* an Alaska bankruptcy court had determined that fishing quota rights, though determined by post-petition regulation, were property of the estate. 224 B.R. 117. The qualifying events to receive the rights (fishing in previous years) had occurred prepetition, and no qualifying activities were required postpetition. The decision was based on the fact that the procedure to promulgate the regulations was well advanced when the debtor filed for bankruptcy relief, and on reasoning that the fishing quota rights were "so rooted in the debtor's prebankruptcy past that they should be included as property of the estate." *Id.* at 124 *(citing Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)).

ment sought to offset post-petition contract payments owed to the farmer against debt owed by the farmer to the government. Each contract was found to be an executory contract, with material duties owed by both parties. The farmers would not plant crops on the set-aside land, maintain cover on the land, and provide the government with certain documents; and the government had to make payment. Each contract could be assumed by the farmers through their chapter 11 or chapter 12 plans, and the offsets were denied.

Cases in which debtors may keep post-petition government payments by assuming executory contracts are not relevant to the facts or issues here. Debtor has not claimed to have and does not have a contract, much less an executory contract. He owes no post-petition duty to the government. Moreover, two Circuit Courts of Appeals explicitly distinguished between monies or payment-in-kind received from contracts not to plant crops, and monies received from crop loss disaster programs. *Schneider v. Nazar (In re Schneider)*, 864 F.2d 683, 685 (10th Cir.1988); *In re Schmaling*, 783 F.2d 680, 683 (7th Cir. 1986). The Tenth Circuit noted that proceeds are property of the estate under § 541(a) and then wrote, "Agricultural entitlement payments which result from the actual disposition of a planted crop are proceeds of that crop." *Schneider*, 864 F.2d at 685 (citations omitted)

 Here, as in *Ring, Lesmeister* and *Lemos,* the disaster relief payment that Debtor applied for post-petition was granted because Debtor grew crops and suffered loss pre-petition. The payment was granted based on events rooted in Debtor's prebankruptcy past. At the time of filing, the CLDAP was already enacted and Debtor had already suffered crop loss. Debtor's entitlement to payment existed, even though he could not immediately realize that payment. The post-petition application for payment was merely a ministerial act, not a qualifying event. Under § 541(a)(1), the disaster payment is property of the estate because it was a right to payment held by the Debtor at the commencement of his bankruptcy case. Alternatively, under § 541(a)(6), the disaster payment is property of the estate as proceeds of the pre-petition crop.

It is, therefore, ORDERED that the CLDAP payment for 1998 crop losses suffered by Debtor is property of the bankruptcy estate, and judgment is entered on the Complaint to Recover Property of plaintiff/debtor John Wayne Boyett for the Defendant, Anne R. Moore, Trustee.[4]

---

4. Remaining for resolution in the Debtor's underlying case, Chapter 7 case No. 99–10420 is the Debtor's alternative theory that the crop loss disaster payment is exempt under Official Code of Georgia (O.C.G.A.) §§ 44–13–100 and the Trustee's objection to the claim of exemp-

tion. The parties also agree that there are no facts in dispute, this being solely a question of law. The parties may submit any additional briefs on this issue within 30 days of the date of this order.