# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2203

_____

In re:  Daryl Lee Vote,                              *
                                                     *
            Debtor.                                  *
                                                     *
_____                                *    Appeal from the United States
                                                     *    District Court for the
Wayne Drewes, as Bankruptcy Trustee,                 *    District of North Dakota.
                                                     *
            Appellant,                               *
                                                     *
      v.                                             *
                                                     *
Daryl Lee Vote,                                      *
                                                     *
            Appellee.                                *

_____

Submitted:  December 10, 2001
     Filed:  January 16, 2002

_____

Before WOLLMAN, Chief Judge, MURPHY, Circuit Judge, and FENNER,[1] District
     Judge.

_____

WOLLMAN, Chief Judge.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western
District of Missouri, sitting by designation.

Wayne Drewes, in his capacity as bankruptcy trustee (the trustee), appeals the decision of the Eighth Circuit Bankruptcy Appellate Panel affirming the bankruptcy court's[2] ruling that Daryl Lee Vote may retain payments made to him under two farm loss compensation programs. In re Vote, 261 B.R. 439, 444 (B.A.P. 8th Cir. 2001). We affirm.

**I.**

Vote, a North Dakota farmer, did not plant a crop in 1999 because the soil was saturated. On September 7, 1999, Vote filed a Chapter 7 bankruptcy petition. On October 22, 1999, Congress passed the Omnibus Consolidated Appropriations Act, 2000, Pub. L. No. 106-113 (the Appropriations Act), which funded the Market Loss Assistance Payment program (MLAP) and the Crop Disaster Program (CDP) (collectively, the payments). Congress enacted the MLAP and the CDP to compensate farmers for 1999 losses related to crop disasters. Between November 1999 and April 2000, Vote received a total of $33,238 in payments. It is from the denial of his motion to compel Vote to turn over those payments that the trustee appeals.

**II.**

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d). Our standard of review is the same as that applied by the bankruptcy appellate panel, i.e., we review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. In re Papio Keno Club, Inc., 262 F.3d 725, 728 (8th Cir. 2001); In re Popkin & Stern, 223 F.3d 764, 765 (8th Cir. 2000). "Whether property is included in the bankruptcy estate is a question of law." In re Cent. Ark. Broad., 68 F.3d 213,

---

[2]The Honorable William A. Hill, United States Bankruptcy Judge for the District of North Dakota.

214 (8th Cir. 1995) (citing In re Da-Sota Elevator Co., 939 F.2d 654, 654-55 (8th Cir. 1991)).

Title 11 of the United States Code, Section 541(a)(1) states: "The commencement of a case . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) [A]ll legal or equitable interests of the debtor in property as of the commencement of the case." The question, then, is whether Vote had a legal or equitable interest in the payments at the time he filed his petition.

The trustee argues that under the holding in Segal v. Rochelle, 382 U.S. 375 (1966), the payments are property of the estate. In Segal, the Court held that the debtor had an existing interest in a tax refund and found that the debtor's interest in a loss carryback under the tax code was "sufficiently rooted in the pre-bankruptcy past" to be included as property of the estate. Id. at 380. Segal is distinguishable, however, for unlike the Appropriations Act in the present case, the law authorizing the tax refund predated the bankruptcy filing. Thus, the Segal debtor possessed an existing interest at the time of filing, whereas Vote had a mere hope that his losses might generate revenue in the future.

To find for the trustee on the basis that the payments were "sufficiently rooted" would allow the trustee to assert more rights than Vote had at the commencement of his case. The legislative history of the 1978 Bankruptcy Code makes clear that despite the broad scope of § 541, it "is not intended to expend [sic] the debtor's rights against others more than they exist at the commencement of the case." S. Rep. No. 95-989, at 82 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868.

The trustee cites a number of cases that follow the rule in Segal. In each of those cases, however, there existed a readily discernable legal interest at the time of filing. Some arose from statutes, some from contracts, and some from lawsuits, but

all conferred upon the debtors interests with some potential value, even though those interests may have been only contingent.  In contrast, before Congress passed the Appropriations Act, Vote had no interest of any kind.

A recent decision from the Ninth Circuit supports our interpretation of § 541(a)(1).  In Sliney v. Battley (In re Schmitz), 270 F.3d 1254, 1258-59 (9th Cir. 2001), the Ninth Circuit found that the profits from a debtor's sale of his fishing quotas were not property of the bankruptcy estate.  The debtor had filed a bankruptcy petition more than one year before the promulgation of regulations that entitled him to fishing quota rights based on his pre-filing catch history.  The court found that "[o]n the date that Schmitz filed his petition, he might have had a hope, a wish and a prayer that the Secretary would eventually implement the plan then under consideration.  However, . . . as of the date of the petition, Schmitz's 1988-1990 catch history had no value."  Id. at 1258.  In concluding that Schmitz's expectations did "not rise to the level of property," the Ninth Circuit quoted with approval the bankruptcy appellate panel's decision in the instant case.  Id.

The trustee urges us to consider this case under § 541(a)(6) and (7) as well as § 541(a)(1).  The (a)(6) argument was not raised in the bankruptcy court, however, and we will not consider it for the first time on appeal.

The bankruptcy appellate panel found that the trustee had abandoned his argument under (a)(7).  While it is not clear from the record that this is true, the trustee's argument fails in any event. Subsection (a)(7) states that "[a]ny interest in property that the estate acquires after the commencement of the case" becomes property of the estate.  The trustee has not shown how the bankruptcy estate acquired an interest in the payments. Cf. Stoebner v. Wick (In re Wick), No. 01-1312, slip op. at 5 (8th Cir. Jan. 9, 2002) (proceeds from stock options that matured post-petition come into estate under § 541(a)(6) because options were property of estate under § 541(a)(1) even though unvested and contingent).  Under the trustee's approach, the

-4-

losses themselves must have been part of the estate. For the losses to come into the estate, the trustee must be able to bring them in under § 541. We have found no case in which a pure loss with no attendant potential benefit was included as property of the estate. Thus, we conclude that the payments are not an after-acquired interest of the estate.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.