United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 6, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

-----

No. 04-30189

-----

In The Matter Of:  EDWARD KEITH BURGESS,

                                                            Debtor.

_____

EDWARD KEITH BURGESS,

                                                            Appellant,

versus

LUCY G. SIKES; UNITED STATES TRUSTEE,

                                                            Appellees.

-----

Appeal from the United States District Court for
the Western District of Louisiana

-----

Before REAVLEY, BENAVIDES and PRADO, Circuit Judges.

REAVLEY, Circuit Judge:

Agreeing with other circuits, we hold that a crop disaster payment from the federal

government to a farmer, who was the debtor in a closed bankruptcy case, should not be

treated as property of his bankruptcy estate. We reverse the judgment of the district court.

BACKGROUND

The relevant facts are not in dispute. Appellant Edward Burgess, a farmer, filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code on August 2, 2002. A bankruptcy trustee was appointed. Burgess received a discharge on December 5, 2002. Legislation known as the Agricultural Assistance Act of 2003 became law on or about February 20, 2003. This legislation provided for crop disaster payments to farmers for crop losses in 2001 or 2002. The earliest date on which farmers could apply for disaster payments under this legislation was June 21, 2003. The record is unclear as to when Burgess actually applied for a disaster payment under the program, but there is no dispute that his application would have been submitted after his bankruptcy discharge.

On August 15, 2003, after the case had been administratively closed and after Burgess had received his discharge, the trustee received a check from the Farm Service Agency of the Department of Agriculture in the amount of $24,829. This check was a crop disaster payment for Burgess under the above-described legislation, for a failed 2001 crop.

The bankruptcy proceeding was reopened to resolve what to do with this check. Burgess filed a "Motion for Turnover" requesting that the check be given to him. The trustee contended that the funds were property of the bankruptcy estate and therefore should go to the creditors. The bankruptcy court issued a decision agreeing with the

2

trustee. Burgess appealed this decision to the district court, and the district court affirmed the bankruptcy court.

## DISCUSSION

"The commencement of a [bankruptcy] case . . . creates an estate." 11 U.S.C. § 541(a). The bankruptcy estate includes

> the following property, wherever located and by whomever held: (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case [and] . . . (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

Id. The bankruptcy court and the district court held that the disaster relief payment was property of the estate.

A number of bankruptcy courts have considered whether crop disaster or similar payments are property of the estate. These courts have concluded that these government payments for crop losses occurring before the debtor filed for bankruptcy are property of the estate under § 541 because they constitute proceeds of property of the estate under § 541(a)(6) or because the payments themselves fall within the ambit of a legal or equitable interest under § 541(a)(1).

For example, in In re Ring,[1] the bankruptcy and district courts held that crop disaster payments were "proceeds" of property of the estate under § 541(a)(6). The bankruptcy court reasoned that "[s]ince the crops and their proceeds are property of the

_____

[1] 169 B.R. 73 (Bankr. M.D. Ga.), aff'd, 160 B.R. 692 (M.D. Ga. 1993).

3

estate and the disaster payments are merely the substitute for the proceeds of the crops, then it logically follows that the disaster payments are also property of the estate."[2]

In In re Lemos,[3] the court held that crop disaster payments were property of the estate even where, as in the pending case, the legislation authorizing the payments was passed after the bankruptcy filing. Lemos essentially agreed with Ring and held that the crop disaster payment could be considered property of the estate under § 541(a)(1) or proceeds of property of the estate under § 541(a)(6). The court reasoned that since Congress regularly enacts disaster relief and similar farm programs, "[t]he prospect of a federal program being adopted to compensate for farm losses in any given year may therefore be properly characterized as a contingent interest, which, though it may never vest if the program does not encompass a particular crop or a particular year, is property of the bankruptcy estate when it relates to prepetition crops."[4]

Another bankruptcy court decision, In re Boyett,[5] agrees with Lemos and Ring. In Boyett, the court reasoned that "the disaster relief payment that Debtor applied for post-petition was granted because Debtor grew crops and suffered loss pre-petition. The

---

[2] 169 B.R. at 77.

[3] 243 B.R. 96 (Bankr. D. Idaho 1999).

[4] Id. at 99. We note that a later bankruptcy court decision has concluded that Lemos is no longer good law, in light of the Schmitz decision discussed below. In re Stallings, 290 B.R. 777, 781 (Bankr. D. Idaho 2003).

[5] 250 B.R. 817 (Bankr. S.D. Ga. 2000).

payment was granted based on events rooted in Debtor's prebankruptcy past."[6]   The

court therefore held that the crop disaster payment was property of the estate under §

541(a)(1) or alternatively proceeds of property of the estate under § 541(a)(6).

Arguably, Ring and Boyett are distinguishable from the pending case in that the

acts authorizing the disaster relief payments became law before the debtors filed for

bankruptcy.[7]  However, our reading of these cases is that the date of the legislation was

not as important as the fact that the disaster payments covered crop losses the farmers had

incurred before they filed for bankruptcy.

Regardless, these bankruptcy decisions read the scope of property of the estate

under § 541 expansively.  We have similarly recognized that "[t]he scope of property

rights and interests included in a bankruptcy estate is very broad: The conditional, future,

speculative, or equitable nature of an interest does not prevent it from being property of

the bankruptcy estate."[8]  Likewise, the Supreme Court has recognized that § 541 is read

broadly and is interpreted to "include[] all kinds of property, including tangible or

intangible property, causes of action . . . and all other forms of property" previously

---

[6]  Id. at 822.

[7]  See Ring, 169 B.R. at 74; Boyett, 250 B.R. at 818.

[8]  In re Kemp, 52 F.3d 546, 550 (5th Cir. 1995) (citing In re Haber Oil Co., 12 F.3d 426, 435 (5th Cir. 1994); La. World Exposition v. Fed. Ins. Co., 858 F.2d 233, 245 (5th Cir. 1988); Ga. Pac. Corp. v. Sigma Serv. Corp., 712 F.2d 962, 967-68 (5th Cir. 1983)).

specified in the Bankruptcy Act.[9]  In <u>Segal v. Rochelle</u>,[10] the Court held that a tax refund

was property of the estate.  The Court reasoned that the tax refund at issue was

"sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts'

ability to make an unencumbered fresh start" that it should not be excluded from property

of the estate.[11]

In light of the broad reading the Supreme Court and this court have given to § 541,

the bankruptcy court decisions cited above offer one plausible analysis of the issue

presented.  Nevertheless, we find more persuasive the decisions of two circuit courts

supporting Burgess's position that the crop disaster payment is not property of the estate.

In <u>In re Vote</u>,[12] the Eighth Circuit held that payments to a farmer under a crop

disaster program and the Market Loss Assistance Program (MLAP) were not property of

the estate.  The essential facts are indistinguishable from our case.  The farmer did not

plant a crop in 1999 because the soil was saturated.  In September of 1999 he filed for

bankruptcy.  In October of 1999, Congress enacted the legislation that allowed the farmer

to apply for crop disaster and MLAP payments.  The court, affirming the Eighth Circuit

bankruptcy appellate panel, held that the payments were not property of the estate

---

[9]  <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 204-05 & n.9 (1983) (internal quotation marks omitted).

[10] 382 U.S. 375 (1966).

[11] <u>Id.</u> at 380.

[12] 276 F.3d 1024 (8th Cir. 2002).

because at the time the farmer filed for bankruptcy, he "had a mere hope that his losses might generate revenue in the future."[13]  For the court, a critical fact was that the bankruptcy filing predated the legislation authorizing the payment.  The court distinguished the Supreme Court's decision in  Segal, discussed above, on grounds that the law authorizing the refund at issue in Segal predated the bankruptcy filing.[14]  The Eighth Circuit reasoned that before Congress passed the farm bill authorizing the crop disaster payment, the farmer "had no interest of any kind."[15]

Vote found persuasive the Ninth Circuit's decision in In re Schmitz.[16]  In Schmitz, a fisherman received valuable fishing quotas allowing him to take a certain amount of fish.  The quotas were sold for cash or exchanged for in-kind goods.  The fisherman had filed for bankruptcy before the federal regulations were finalized providing him with the quotas.  Even thought the quotas were based on his pre-petition fishing history, the court held that the quotas were not property of the estate.  Quoting language from the bankruptcy appellate panel in Vote that the debtor had "at most, an expectation that Congress would enact legislation authorizing crop disaster or assistance payments to

---

[13] Id. at 1026.

[14] Id.

[15] Id. at 1027.

[16] 270 F.3d 1254 (9th Cir. 2001).

7

farmers," the court in <u>Schmitz</u> held that "a hope or expectation that fishing quota regulations would be enacted . . . does not rise to the level of property."[17]

We essentially agree with analysis offered in <u>Vote</u> and <u>Schmitz</u>. In the pending case, the legislation providing for the crop disaster payment in issue did not exist at the time Burgess filed for bankruptcy. Indeed, Burgess had already received his bankruptcy discharge by the time the 2003 Act became law. As with the debtor in <u>Vote</u>, Burgess had at the time he filed for bankruptcy a "mere hope" that future legislation would provide relief for his crop loss. Burgess had no legal or equitable right to such relief at the commencement of his bankruptcy case. Although, as the <u>Lemos</u> court noted, "Congress frequently and regularly enacts a variety of farm subsidy programs, including price supports, set-asides, and disaster relief, which change from year to year,"[18] Burgess had no way on knowing whether legislation covering his crop loss for his 2001 crop loss would be enacted, and he had no legal or equitable right to such a payment absent such legislation.

Nor do we believe that the crop disaster payment can properly be characterized as "proceeds" of property of the estate under § 541(a)(6). Section 541(a)(6), by its terms, provides that property of the estate includes "proceeds . . . of . . . property of the estate," So reading § 541(a)(6) together with § 541(a)(1), the "proceeds" under § 541(a)(6) must

_____

[17] <u>Id.</u> at 1258 (quoting <u>In re Vote</u>, 261 B.R. 439, 444 (B.A.P. 8th Cir. 2001)).

[18] 243 B.R. at 99.

8

still derive from "property of the estate," defined by § 541(a)(1) as a legal or equitable interest of the debtor in property as of the commencement of the case. Again, Burgess had no legal or equitable interest in property at the commencement of the estate which could mature into the crop disaster payment. Stated another way, § 541(a)(6) and its reference to proceeds cannot retroactively create a property interest that did not exist at the commencement of the case. If the contingent interest in a crop disaster payment is not property of the estate, the payment itself cannot qualify as proceeds of property of the estate under § 541(a)(6).

Judgment Reversed; case Remanded.