BENTON, Circuit Judge.
Rebecca J. Mierkowski and Dennis L. Mierkowski filed a Chapter 13 petition under the Bankruptcy Code. In their plan, the Mierkowskis proposed to bifurcate Ford Motor Credit Company’s claim. Ford Credit objected to the plan, and the bankruptcy court overruled the objection. Ford Credit appeals. Having jurisdiction under 28 U.S.C. § 158(d)(2), this court reverses and remands.
I.
In August 2006, the Mierkowskis purchased a new vehicle for the cash-sale price of $22,444. The Mierkowskis and the dealer agreed to a trade-in allowance of $13,750, but $21,820.65 was still owed on the trade-in vehicle. The difference between the amount still owed on a vehicle and its value is termed “negative equity.” The negative equity in the trade-in, $8,070.65, was included in the “amount financed” (which equaled the “total sale price”). The transaction was memorialized by a Missouri Simple Interest Vehicle Retail Installment Contract, which provided for 0 percent interest and 72 monthly payments. The dealer assigned the contract to Ford Credit.
The Mierkowskis filed for Chapter 13 relief 682 days after purchasing the vehicle. In their plan, the Mierkowskis proposed to bifurcate Ford Credit’s claim into two components: a secured component equal to the fair-market value of the new vehicle, and an unsecured claim for the balance. Ford Credit objected, arguing its claim could not be bifurcated due to the “hanging paragraph” of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).[1] The bankruptcy court ruled that the debt attributable to the cash-sale price of the new vehicle was secured, but the debt attributable to the negative equity in the trade-in was unsecured.
II.
Generally, a Chapter 13 debtor may retain a vehicle and modify the rights of a secured creditor that has a purchase-money security interest (PMSI) in the vehicle, by bifurcating the creditor’s claim into se *742 cured and unsecured parts based on the vehicle’s value. See 11 U.S.C. §§ 506(a)(1), 1325(a)(5). The creditor has a secured claim to the extent of the value of the vehicle, and an unsecured claim for the remainder of the debt. See 11 U.S.C. § 506(a)(1).
Under BAPCPA, the hanging paragraph prohibits bifurcation under § 506 if “the creditor has a purchase-money security interest securing the debt that is the subject of the claim,” the debt was incurred within the 910 days preceding the filing of the petition, and the collateral is a motor vehicle for the debtor’s personal use. At issue is whether Ford Credit has a PMSI securing its entire claim, including the amount financed to pay off the negative equity in the trade-in vehicle. This question of law is subject to de novo review. See Drewes v. Vote (In re Vote), 276 F.3d 1024, 1026 (8th Cir.2002).
PMSI is not defined in the Bankruptcy Code. In BAPCPA, Congress incorporated the state-law definition of PMSI from Article 9 of the Uniform Commercial Code. See In re Price, 562 F.3d 618, 624 (4th Cir. 2009); Reiber v. GMAC, LLC (In re Peaslee), 547 F.3d 177, 184 (2d Cir.2008). Article 9 states:
(a) In this section:
(1) “Purchase-money collateral” means goods or software that secures a purchase-money obligation incurred with respect to that collateral; and
(2) “Purchase-money obligation” means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.
(b) A security interest in goods is a purchase-money security interest:
(1) To the extent that the goods are purchase-money collateral with respect to that security interest;
Mo.Rev.Stat. § 400.9-103. The Official Comment 3 to Article 9 states:
As used in subsection (a)(2), the definition of “purchase-money obligation,” the “price” of collateral or the “value given to enable” includes obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, dumurrage, administrative charges, expenses of collection and enforcement, attorney’s fees, and other similar obligations.
The concept of “purchase-money security interest” requires a close nexus between the acquisition of collateral and the secured obligation....
Mo. Ann. Stat. § 9-103, Official Comment 3 (emphasis added). See In re Nocita, 914 S.W.2d 358, 359 (Mo. banc 1996) (When construing uniform and model acts enacted by the General Assembly, it is assumed the legislature enacted them with the intention of adopting the accompanying interpretations.).
Comment 3 lists a wide range of obligations that can be part of a vehicle’s “price,” indicating that “price” should be broadly interpreted. The Mierkowskis’ negative-equity obligation is sufficiently similar to those listed in Comment 3, so as to be within the “other similar obligations” part of the definition of “price.” See Reiber v. GMAC, LLC (In re Peaslee), 13 N.Y.3d 75, 82-83, 885 N.Y.S.2d 1, 5, 913 N.E.2d 387, 390, No. 109, 2009 WL 1766000, at *4 (N.Y. June 24, 2009). Since the parties here agreed to include the negative equity as part of the total sale price of the new vehicle, the negative equity was “an integral part of’ and “inextricably intertwined” with the sales transaction. Graupner v. Nuvell Credit Corp. (In re Graupner), 537 F.3d 1295, 1302 (11th Cir. *743 2008). The negative-equity financing of the trade-in and the new-car purchase were a “package deal.” Id. Therefore, there was “a close nexus” between the acquisition of the new vehicle and the negative-equity financing. See Price, 562 F.3d at 627.
The amount financed to pay off the negative equity in the trade-in is “part of the price” of the new car, so it is a purchase-money obligation. See Mo.Rev.Stat. § 400.9 — 103(a)(2). The new car is purchase-money collateral securing the purchase-money obligation. See § 400.9-103(a)(1). Thus, Ford Credit has a PMSI securing the negative-equity financing. See § 400.9-103(b)(l).
This interpretation is consistent with the Missouri Motor Vehicle Time Sales Act (MVTSA), Mo.Rev.Stat. § § 365.010-365.160, which regulates installment sales of motor vehicles. Under Missouri law, courts take into consideration statutes involving similar or related subject matter to shed light upon the meaning of the statute at issue. Lane v. Lensmeyer 158 S.W.3d 218, 226 (Mo. banc 2005). Article 9 and MVTSA both relate to the installment financing of motor vehicles, and should be read in pari materia.
MVTSA defines “cash sale price” as the price at which the vehicle would have been sold for cash, instead of for installment payments. Mo.Rev.Stat. § 365.020(1). It further defines “time sale price” as the cash-sale price plus insurance and other benefits, official fees, and interest. § 365.020(15). “Other benefits” includes negative equity payments, making negative-equity part of the time-sale price. See § 365.020(8), (15). “Price” under Article 9 includes interest, and thus, is not the cash-sale price. See Mo. Ann. Stat. § 9-103, Official Comment 3. Therefore, interpreting “price” in Article 9 to include negative equity is consistent with the definition of “time sale price” in MVTSA.
This court has considered the many opinions by bankruptcy courts addressing this issue. This court strives to “maintain uniformity in the law among the circuits, wherever reasoned analysis will allow.” Owens v. Miller (In re Miller), 276 F.3d 424, 429 (8th Cir.2002). The Tenth, Fourth, and Eleventh circuits (the only three to resolve this issue) each determined that a creditor had a PMSI securing negative-equity financing for a trade-in vehicle. See Ford v. Ford Motor Credit Corp. (In re Ford), 574 F.3d 1279, 1285 (10th Cir.2009); Price, 562 F.3d at 627; Graupner, 537 F.3d at 1302. This court holds that Ford Credit has a PMSI securing its entire claim.
III.
The judgment of the bankruptcy court is reversed, and the case remanded for proceedings consistent with this opinion.

. The "hanging paragraph” is the unnumbered paragraph directly following 11 U.S.C. § 1325(a)(9).