# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-1030

———————

In re: Lisa Renee Callicott,       *

                                  *

      Debtor.                    *

-----------------------     *

                                    *

Nuvell Credit Company, LLC,   *
formerly known as Nuvell Credit  *
Corporation,                  *

                                    *

      Appellant,              *

                                    *  Appeal from the United States

      v.                      *  District Court for the Eastern

                                    *  District of Missouri.

Lisa Renee Callicott,        *

                                    *

      Appellee.               *

-----------------------     *

                                    *

American Financial Services    *
Association; National Automobile *
Dealers Association,         *

                                    *

      Amici on behalf of Appellant.  *

———————

Submitted: June 11, 2009
Filed: September 9, 2009

———————

Before BYE, HANSEN, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

Lisa Renee Callicott filed a Chapter 13 petition under the Bankruptcy Code. Nuvell Credit Company, LLC, filed a proof of claim. Callicott objected, asserting Nuvell did not have a purchase-money security interest securing its entire claim. The bankruptcy court sustained the objection, which the district court affirmed. Nuvell appeals. Having jurisdiction under 28 U.S.C. § 158(d)(1), this court reverses and remands.

I.

In January 2006, Callicott purchased a new vehicle for the cash-sale price of $22,189. Callicott and the dealer agreed to a trade-in allowance of $3,000, but $7,149.65 was still owed on the trade-in vehicle. The difference between the amount still owed on a vehicle and its value is termed "negative equity." The negative equity in the trade-in, $4,149.65, was included in the "amount financed," and the "total sale price." The transaction was memorialized by a Missouri Retail Installment Sale Contract, which provided for 20.95 percent interest and 72 monthly payments. The dealer assigned the contract to Nuvell. There is no allegation that the contract was fraudulent or otherwise illegal.

In July 2007, Callicott filed for Chapter 13 relief. Nuvell filed a proof of claim in the amount of $26,709.14. Callicott objected, arguing that Nuvell did not have a purchase-money security interest (PMSI) securing the portion of its claim attributable to negative equity financing, and therefore that portion of the claim should be treated as unsecured. The bankruptcy court sustained the objection, treating $4,149.65 of the claim as unsecured. The bankruptcy court's order was affirmed in district court.

II.

The "hanging paragraph" of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005[1] disallows bifurcating a creditor's claim into secured and unsecured parts if "the creditor has a purchase-money security interest securing the debt that is the subject of the claim," the debt was incurred within the 910 days preceding the filing of the petition, and the collateral is a motor vehicle for the debtor's personal use. At issue is whether Nuvell has a PMSI securing its entire claim, including the amount financed to pay off the negative equity in the trade-in vehicle. This is a question of law subject to de novo review. *See Drewes v. Vote (In re Vote)*, 276 F.3d 1024, 1026 (8th Cir. 2002).

This legal issue is controlled by *Ford Motor Credit Company v. Mierkowski (In re Mierkowski)*, ___ F.3d ___ (8th Cir. 2009) (No. 08-3866), which held that a creditor has a PMSI securing the negative equity financing that is part of a new car sale. This court's decision was based on the agreement of the parties to include negative equity financing as part of the price of the new vehicle, making it a purchase-money obligation under Missouri's version of Article 9 of the Uniform Commercial Code. *Id.,* slip op. at 5.

III.

Here, the parties agreed to include the negative-equity financing as part of the price of the new vehicle, as evidenced by the Retail Installment Sale Contract. Therefore, Nuvell has a PMSI securing its entire claim. *See id.*

---

[1] The "hanging paragraph" is the unnumbered paragraph directly following 11 U.S.C. § 1325(a)(9).

Citing *In re Weiser*, 381 B.R. 263, 268 (Bankr. W.D. Mo. 2007), Callicott argues that Nuvell failed to prove she would not have signed the contract but for the negative-equity financing. However, the existence of a PMSI does not depend on whether the negative equity financing was essential to the debtor's purchase of the new vehicle, but rather on whether it was part of the price of the collateral. ***Ford Motor Credit***, ___ F.3d at ___ (No. 08-3866, slip op. at 5).

IV.

The judgment of the district court is reversed, with directions to remand to the bankruptcy court for proceedings consistent with this opinion.

BYE, Circuit Judge, concurring.

Because I am bound by the court's decision in Ford Motor Credit Company v. Mierkowski (In re Mierkowski), ___ F.3d ___ (8th Cir. 2009) (No. 08-3866), I concur. Were I not, I would conclude negative equity is not "all or part of the price of" a new vehicle or "value given to enable the debtor to acquire rights in or the use of" a new vehicle. Accordingly, I would hold Nuvell Credit Company's advance of credit in connection with the purchase of Lisa Callicott's motor vehicle was not entirely protected from "cramdown" by the "hanging paragraph" in 11 U.S.C. § 1325(a). For the reasons stated in my dissent in In re Mierkowski, I would hold the negative equity is not a part of Nuvell Credit Company's purchase money security interest and not protected from cramdown under the hanging paragraph. 11 U.S.C. § 1325(a)(*).

_____