07-3962-bk(L)

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued:    September 25, 2008                    Decided: October 9, 2009)

Docket Nos. 07-3962-bk(L); 07-3952-bk(CON); 07-3964-bk(CON); 07-3986-bk(CON); 07-3990-bk(CON)

_____

IN RE: FAITH ANN PEASLEE, JONATHAN T. VANMANEN, MICHAEL COLOMBAI, SHANNON A. COLOMBAI, PAMELA D. JACKSON

_____

GEORGE M. REIBER,

*Defendant-Appellant*,

– v. –

GMAC, LLC, FORD MOTOR CREDIT COMPANY, GENERAL MOTORS ACCEPTANCE CORPORATION, SOVEREIGN BANK, HSBC AUTO FINANCE,

*Plaintiffs-Appellees.*

_____

Before: CALABRESI, STRAUB, and RAGGI, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Western District of New York reversing a decision of the Bankruptcy Court and holding that negative equity on a trade-in vehicle is included in the purchase money security interest accompanying a new car's purchase and is therefore protected from cramdown by the Hanging Paragraph of Section 1325 of the Bankruptcy Code. Because we found that this case raised an important and recurring

question of New York state law—whether negative equity is included in a purchase money security interest under New York's interpretation of the Uniform Commercial Code ("U.C.C.")—we certified that question to the New York Court of Appeals. The Court of Appeals answered the question in the affirmative. Accordingly, we now AFFIRM.

.   _____

GEORGE M. REIBER, Rochester, N.Y., *Pro se*.

BARKLEY CLARK (Katherine M. Sutcliffe Becker, *on the brief*), Stinson Morrison Hecker, LLP, Washington, D.C., *for Plaintiffs-Appellees* GMAC, LLC and Ford Motor Credit Company.

Matthew J. McGowan, Salter McGowan Sylvia & Leonard, Inc., Providence, R.I., *for Plaintiff-Appellee* Sovereign Bank.

Martin A. Mooney, Mark D. Glastetter, Bonnie S. Baker, Deily Mooney & Glastetter, LLP, Albany, N.Y., *for Plaintiff-Appellee* HSBC Auto Finance.

Richard Lieb, St. John's University School of Law, Jamaica, N.Y. (Ingrid M. Hillinger, *of counsel*), *for Amici Curiae* Ingrid M. Hillinger, Michael Hillinger, Adam J. Levitin, Michael M. White, and Jean Braucher in Support of Defendant-Appellant.

Lewis W. Siegel (Tara Twomey, *of counsel*), New York, N.Y., *for Amicus Curiae* National Association of Consumer Bankruptcy Attorneys in Support of Defendant-Appellant.

James J. White, Ann Arbor, MI, *for Amici Curiae* American Financial Services Association and National Automobile Dealers Association in Support of Plaintiffs-Appellees.

_____

*Per Curiam*:

This consolidated appeal raises the question of whether the portion of an automobile

retail instalment sale obligation attributable to a trade-in vehicle's "negative equity" (*i.e.*, debt

owed above and beyond the current collateral value of the traded-in vehicle) should be

considered part of the purchase-money security interest arising from the sale of a vehicle, and therefore protected from cramdown by the "hanging paragraph" of Section 1325 of the Bankruptcy Code. We assume familiarity with the facts and the procedural history of this case as outlined in our prior opinion, *see In re Peaslee*, 547 F.3d 177 (2d Cir. 2008), which in turn drew from the Bankruptcy Court and District Court opinions in this case, s*ee Gen. Motors Acceptance Corp. v. Peaslee*, 373 B.R. 252 (W.D.N.Y. 2007); *In re Peaslee*, 358 B.R. 545 (Bankr. W.D.N.Y. 2006).

## I. Background

As we explained previously, car buyers purchasing new cars often engage in what are called purchase-money transactions in which a seller retains an interest in the good sold (*i.e.*, the car) to secure payment of all or part of its price. This interest is known as a "purchase-money security interest," or PMSI. *See In re Peaslee*, 547 F.3d at 180. Not infrequently, when car buyers trade in old cars, the value of the debt the buyer owes on the old car exceeds the car's street value. "Adjusting the sales contract for a new vehicle to account for this deficiency is known as 'rolling in' the negative equity." *Id.* Whether this negative equity is part of the PMSI becomes a matter of significance because of 11 U.S.C. § 1325(a)(*), the so-called "hanging paragraph." While a Chapter 13 debtor may generally establish a plan that allows her to retain a vehicle and bifurcate a creditor's claims into secured and unsecured portions based on the value of that vehicle in what is called a cramdown, *see* 11 U.S.C. § 1325(a)(5)(B), the hanging paragraph establishes an exception. This provision prohibits the cramdown of PMSIs secured by an automobile purchased within 910 days of the debtor's bankruptcy filing. *See* 11 U.S.C. §

1325(a)(*).[1]

A PMSI is not defined in the hanging paragraph or elsewhere in the federal Bankruptcy Code, and we have previously held that state law governs its definition. *See In re Peaslee*, 547 F.3d at 184. Specifically, we found that the definition of PMSI was controlled by the proper construction of "purchase-money obligation," which Section 9-103(a)(2) of the U.C.C. describes as an obligation "incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." N.Y. U.C.C. § 9-103(a)(2).[2] Recognizing both that this issue had not been addressed by any court of the State of New York and that it was certain to recur, *see In re Peaslee*, 547 F.3d at 183–84, we certified the following question to the New York Court of Appeals:

> Is the portion of an automobile retail instalment sale attributable to a trade-in vehicle's "negative equity" a part of the "purchase-money obligation" arising from

---

[1] The hanging paragraph was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23. It provides in full:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if *the creditor has a purchase money security interest securing the debt that is the subject of the claim*, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

*Id.* (emphasis added).

[2] As the New York Court of Appeals explained, the relevant provisions of the U.C.C. interrelate. Under N.Y. U.C.C. § 9-103(b), a security interest in a good "is a purchase-money security interest . . . to the extent that the goods are purchase-money collateral with respect to that security interest." *See In re Peaslee*, 13 N.Y.3d 75, 80 (2009) (quoting U.C.C.). "[P]urchase-money collateral" is in turn defined as "goods or software that secures a purchase-money obligation incurred with respect to that collateral." N.Y. U.C.C. § 9-103(a)(1). This makes "purchase-money obligation," defined in § 9-103(a)(2), the key term for interpreting PMSI.

the purchase of a new car, as defined under New York's U.C.C.?

The New York Court of Appeals accepted certification and, in a divided opinion issued on June 24, 2009, answered the question in the affirmative. On July 16, 2009, we invited the parties to submit letter briefs on the effect of the Court of Appeals' decision. We now resolve the case before us by AFFIRMING the judgment of the District Court.

**II. Discussion**

In its interpretation of N.Y. U.C.C. § 9-103(a)(2), the New York Court of Appeals explained that there are two ways that a purchase-money obligation may arise: "(1) where the obligor-the debtor-incurs an obligation as all or part of the 'price' of the collateral, or (2) where 'value' is given to enable the debtor to acquire the collateral." *In re Peaslee*, 13 N.Y.3d at 80. The court concluded that negative equity fits within either definition, *id.*, and found further, as Comment 3 to § 9-103 of the U.C.C. requires, that there was a "close nexus between the acquisition of collateral and the secured obligation" because the financing of negative equity is integral to the completion of the sale of a new car, *id.* at 82. As a result, the Court of Appeals concluded that the portion of an automobile retail instalment sale attributable to a trade-in vehicle's negative equity does constitute a purchase-money obligation under New York's U.C.C. *Id.*

The New York Court of Appeals' answer to our certified question is determinative of the case before us. We now know that, under New York law, negative equity is considered a purchase-money obligation and therefore included in a PMSI. Accordingly, because the other conditions for avoiding cramdown under the hanging paragraph were not contested by the

parties,[3] debtor-appellants' entire claims, including those portions attributable to the payoff of negative equity on their trade-in vehicles, must be treated as secured claims. As a result, creditor-appellees are immune from cramdown and bifurcation of their full security interest in debtor-appellants' cars, including that portion deriving from the negative trade-in value of their prior cars.[4]

The judgment of the District Court, which reversed the Decisions and Orders of the Bankruptcy Court for the Western District of New York, is AFFIRMED.

---

[3] In deciding the appeals from the bankruptcy court, the District Court indicated that "there is no dispute that three of the four conditions in § 1325 for avoiding cramdown have been met: each of the debtors incurred debt by purchasing a motor vehicle for the debtor's personal use within 910 days prior to filing the bankruptcy petition." *Peaslee*, 373 B.R. at 257. In its initial briefing before this Court, appellants vigorously contested the fourth condition: whether debt from previously purchased cars, including those purchased more than 910 days before the bankruptcy filing, should be treated as PMSI when it is "rolled in" to the debt for a new purchase. They made no argument that the facts of this case might cast doubt on the existence of any other requirement of the hanging paragraph. Accordingly, we treat such questions as waived.

[4] After our decision to certify, several other circuit courts addressed the question at issue here and, applying the laws of various states, held, like the New York Court of Appeals, that the amount financed under a motor vehicle retail instalment sale contract for negative equity is part of a PMSI. *See In re Dale*, — F.3d —, 2009 WL 2857998, at *6 (5th Cir. Sept. 8, 2009); *In re Mierkowski*, — F.3d —, 2009 WL 2853586, at *2 (8th Cir. Sept. 8, 2009); *In re Ford*, 574 F.3d 1279, 1285 (10th Cir. 2009); *In re Price*, 562 F.3d 618, 625–28 (4th Cir. 2009). The Eleventh Circuit also reached this conclusion in a case decided before our certification opinion. *See In re Graupner*, 537 F.3d 1295, 1302 (11th Cir. 2008).